**WO**  LMH

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Galen Craig Halla, | No. CV 05-0320-PHX-MHM (ECV) |
| Plaintiff, | **ORDER** |
| vs. | |
| Dora Schriro, et al., | |
| Defendants. | |

In this civil rights action brought by a state prisoner, Defendants moved for summary judgment on Plaintiff's dental care claim (Doc. #36). Plaintiff responded in a pleading labeled a Motion for Jury Trial, and Defendants replied (Doc. #37, #43). The Court will grant Defendants' motion.

**I. Background**

    **A. Procedural History**

In his Complaint, Plaintiff alleged that during four years of his incarceration in the Arizona Department of Corrections (ADC) beginning in 2000, his dental care was delayed by an ADC policy permitting only one filling per visit and by the lack of an adequate number of dentists to provide dental care (Doc. #1). Plaintiff believes that the delays caused him to lose teeth that could have been saved. He brought an Eighth Amendment claim against ADC Director, Dora Schriro; two Lewis Unit Facility Health Administrators, Jim Taylor and Donald Sloan; the Dental Program Manager Michael Adu-Tutu; and three dentists, Robert

1  Sears, Michael D'Mura, and Karl Krebs. Plaintiff claimed that each defendant knew or
2  should have known that the ADC's policies caused him injury but failed to act to correct the
3  harm. The Court required Defendants to answer (Doc. #3)

4      Subsequently, Defendants moved for summary judgment (Doc. #36). They contended
5  that (1) Plaintiff's action fails as a matter of law because there is no evidence of physical
6  injury; (2) there is no evidence that they acted with deliberate indifference; (3) in their
7  official capacities, they are entitled to Eleventh Amendment immunity for monetary damages
8  claims; and (4) they are entitled to qualified immunity because their conduct did not violate
9  a constitutional right. In support, they submitted the affidavit of Michael Adu-Tutu, the
10 Dental Program Manager, who attested that Plaintiff received extensive and adequate dental
11 care (Doc. #37, Ex. C).

12     The Court issued an Order informing Plaintiff about his rights and obligations to
13 respond to Defendants' motion (Doc. #38). The Order specifically informed Plaintiff that
14 if Defendants' motion was properly supported, he could not simply rely on his Complaint but
15 must submit evidence as provided in Rule 56(e) of the Federal Rules of Civil Procedure, or
16 summary judgment might be entered against him.

17     Plaintiff requested and received an additional 90 days to file his response so he could
18 obtain supporting affidavits from his dentists (Doc. ##39, 41). He then filed a response
19 styled as a "Motion for Jury Trial," contending that his dental care was inadequate and
20 caused by deliberate indifference (Doc. #43). In support, he submitted an affidavit by James
21 B. Leavitt, a dentist in Sierra Vista (Leavitt Aff., Ex. B, Doc. #43).[1] In reply, Defendants
22 argued that Plaintiff failed to provide any evidence that he received improper dental
23 treatment (Doc. #46).

24 **B. Factual Background**

25     The undisputed facts are as follows. In January 2000, before he was incarcerated,
26 Plaintiff was in a car accident that broke several of his teeth at the gumline. Plaintiff asserts

27
28     [1]In a Notice of Service, Plaintiff also refers to an "x-ray Exhibit A" but none is attached (Doc. #44).

- 2 -

that when he became an ADC inmate on September 15, 2000, he had between 12 and 13 cavities, some of which needed immediate filling (Compl. at 4, Doc. #1). On October 12, 2000, Dr. Sears examined Plaintiff and found that each of his 26 teeth, including those that were broken at the gumline, had decay (Adu-Tutu Aff. ¶ 7, Ex. C, Doc. #37). Sears developed a treatment plan, noting that tooth #8 needed extraction first (Id.).

Over the next 4 years, Plaintiff had 30 dental appointments, which included 12 extractions, and 24 fillings. He was also frequently prescribed medication for pain. In detail, his dental care history included:

| Date | Event |
|---|---|
| 10/31/00 | Dr. Sears extracted tooth #8. |
| 11/27/00 | Dr. Staley extracted tooth #31 and #32. |
| 12/7/00 | Dr. Sears filled tooth #2, noting that it was borderline restorable and might need extraction if it had significant symptoms. |
| 1/22/01 | Plaintiff reported pain which was treated by a dental assistant, and Dr. Staley put Intermediate Restorative Material on tooth #11 and #12. |
| 2/6/01 | Plaintiff made an emergency dental request, and Dr. Adu-Tutu discussed treatment. Plaintiff did not want any teeth pulled and was on the waiting list for fillings. |
| 2/27/01 | Dr. Paulus filled tooth #5, #6, and #8 (#8 was a miscount because it had been extracted). |
| 4/17/01 | Dr. Krebs treated tooth #16, noting that it might need extraction. |
| 4/25/01 | Plaintiff had a dental emergency, and Dr. Sears put him on medication and scheduled an extraction for tooth #16. |
| 5/3/01 | Plaintiff refused to have tooth #16 extracted. |
| 9/27/01 | Dr. Krebs put a Direct Pulp Cap and Intermediate Restorative Material on tooth #27. |
| 12/13/01 | Dr. Sears extracted tooth #2. |
| 1/15/02 | Dr. D'Mura put Plaintiff on medication for pain and advised that his teeth would be filled on the next visit. |
| 4/25/02 | Dr. D'Mura filled tooth #9, #10 and #11. |
| 9/9/02 | Dr. Krebs filled tooth #29. |
| 1/29/03 | Dr. Krebs filled tooth #26. |
| 2/27/03 | Dr. Krebs examined tooth #19 and #20 for pain and recommended extraction. Plaintiff refused. |

| | | |
|---|---|---|
| 1 | 5/21/03 | Dr. D'Mura filled tooth #19, #20, #22, #23, and #24. |
| 2 | 9/18/03 | Dr. D'Mura filled tooth #3. |
| 3, 4 | 4/7/04 | Upon Plaintiff's report of pain and a lost restoration on tooth #19, Dr. Sears put in a temporary filling and advised Plaintiff that it was borderline restorable and may need extraction. |
| 5 | 6/23/04 | Dr. Sears filled tooth #11, noting that it was borderline restorable. |
| 6 | 10/6/04 | Dr. Grant filled tooth #4 and #6, noting that #6 might not survive. |
| 7 | 12/28/04 | Dr. Grant put Plaintiff on medication for facial swelling from a broken tooth, #6. |
| 8 | 1/12/05 | Dr. Grant extracted tooth #1 and #6. |
| 9 | 1/21/05 | Dr. Sears put Plaintiff on medication for pain from tooth #19 and #20. |
| 10 | 2/9/05 | Dr. Krebs extracted tooth #19 and #20. |
| 11 | 3/14/05 | Dr. Grant filled tooth #25, #27 and #28. |
| 12, 13 | 3/25/05 | Dr. Sears put Plaintiff on medication and scheduled an extraction of tooth #3, which had abscessed. Tooth #11 and #12 were not restorable. |
| 14 | 4/6/05 | Dr. Krebs extracted tooth #3. |
| 15 | 4/13/05 | Dr. Krebs extracted tooth #11 and #12. |

(Adu-Tutu Aff. ¶¶ 8-37, Ex. C. Doc. #37). Plaintiff was released from custody on December 19, 2005.

## II. Legal Standards

### A. Summary Judgment Standard

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). When considering a summary judgment motion, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). These inferences are limited, however, "to those upon which a reasonable jury might return a verdict." Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1220 (9th Cir. 1995).

1  Rule 56(c) mandates the entry of summary judgment against a party who, after
2  adequate time for discovery, fails to make a showing sufficient to establish the existence of
3  an element essential to that party's case and on which the party will bear the burden of proof
4  at trial. Celotex, 477 U.S. at 322-23. Rule 56(e) compels the nonmoving party to "set forth
5  specific facts showing that there is a genuine issue for trial" and not to "rest upon the mere
6  allegations or denials of [the party's] pleading." The nonmoving party must do more than
7  "simply show that there is some metaphysical doubt as to the material facts." Matsushita
8  Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). There is no issue
9  for trial unless there is sufficient evidence favoring the non-moving party. Anderson, 477
10 U.S. at 249. Summary judgment is warranted if the evidence is "merely colorable" or "not
11 significantly probative." Id. at 249-50.

**B. Eighth Amendment**

For an Eighth Amendment violation, a prisoner must show that defendants were deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. Id.

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). In the medical context, deliberate indifference may be shown by (1) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (2) harm caused by the indifference. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle, 429 U.S. at 104). Medical malpractice or negligence is insufficient to establish an Eighth Amendment violation. Estelle, 429 U.S. at 106; Jett, 429 F.3d at 1096; Toguchi, 391 F.3d at 1060.

**III. Analysis**

    **A. Physical Injury**

Defendants contend that this action should be dismissed because Plaintiff has not proven a "physical injury" as an element of his claim. An Eighth Amendment claim, however, requires proof of a sufficiently serious deprivation and a sufficiently culpable state of mind. Farmer, 511 U.S. at 834. This includes, for example, exposure to a substantial risk of harm, even when the threatened harm has not yet occurred. Id. at 845-86. In contrast, "physical injury" is a term of art particular to 42 U.S.C. § 1997e(e), which provides that a prisoner may not bring a civil action for mental or emotional injury without a prior showing of "physical injury." This means that a prisoner may not obtain compensatory damages for mental or emotional injury if the "physical injury" is *de minimis*. Oliver v. Keller, 289 F.3d 623, 629 (9th Cir. 2002).

It is uncontroverted that Plaintiff had 12 teeth extracted while in custody, and the loss of one's teeth certainly surpasses what could be considered a *de minimis* injury. Regardless, as long as Plaintiff could prove his Eighth Amendment claim, he could still obtain nominal and punitive damages, as well as compensatory damages for injury not premised on mental or emotional distress. See Oliver, 289 F.3d at 630. Consequently, the Court rejects Defendants' contention that "physical injury," as that term is defined in jurisprudence interpreting § 1997e(e), is an element of his Eighth Amendment claim.

    **B. Eleventh Amendment**

Defendants are correct that in their official capacities, they cannot be sued for monetary damages. Plaintiff has not contested this argument.

    **C. Deliberate Indifference**

Defendants contend that there is no evidence that they acted with deliberate indifference. The Ninth Circuit has found that when a prisoner attempts to hold a prison employee responsible for deliberate indifference, the prisoner must establish individual fault. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). Sweeping conclusory allegations will not be sufficient to prevent summary judgment. Id. "The prisoner must set forth specific

1  facts as to each individual defendant's deliberate indifference." Id. at 634. He must prove
2  that the specific prison official was deliberately indifferent and that this indifference was the
3  actual and proximate cause of the injury. Id.

4  Plaintiff's action began with "sweeping conclusory allegations" that Defendants acted
5  with deliberate indifference. He named seven prison officials (the Director, two facility
6  health administrators, a dental program manager, and three dentists), but he did not allege
7  with any degree of specificity what each of these Defendants did that was deliberately
8  indifferent. Rather, he generally alleged that the dentists made excuses to Plaintiff's
9  complaints about his care, the dentists and their supervisors "knew or should have known"
10 that their policies were causing injury, and they "knew" that the system delayed or denied
11 access to dental care (Compl. at ¶¶ 4, 6-7, Doc. #1). He also alleged that they were made
12 aware verbally and by complaint letters (Id. ¶ 7). Although these allegations were sufficient
13 to state a claim, they are not sufficient to withstand summary judgment without any evidence
14 to support them. And Plaintiff has not submitted sufficient evidence to show a genuine issue
15 of material fact, as described next.

16 **1. Filling Teeth Within One Week**

17 In response to Defendants' motion, Plaintiff admitted that he received "substantial
18 dental care," but he contended that all of his teeth should have been filled within the first
19 week of his incarceration "as any outside dentist, and Plaintiff's dentist will attest to at Trial"
20 (Mem. at 2, Doc. #43). A promise that certain testimony will manifest itself at trial is not
21 sufficient to withstand summary judgment. Plaintiff was required to submit the evidence to
22 show that there was a genuine issue of material fact for trial. See Fed. R. Civ. P. 56(e);
23 Celotex, 477 U.S. at 322. The affidavit from Plaintiff's dentist, Dr. Leavitt, does not opine
24 that Plaintiff should have had all his teeth filled during his first week in custody. Dr. Leavitt
25 attests only that normal dental standards do not include filling 12 teeth and doing a teeth
26 cleaning over 4½ years (Leavitt Aff., Ex. B, Doc. #43). Dr. Leavitt, however, does not
27 connect his opinion to Plaintiff's specific dental history while in custody nor in any way
28 indicate that he has reviewed Plaintiff's dental history. Leavitt's broad assertion is virtually

1  meaningless in light of the lack of any evidence showing a connection to Plaintiff's
2  circumstances.

3  Moreover, Defendants submitted Dr. Adu-Tutu's opinion that the loss of Plaintiff's
4  teeth during his incarceration was due to the extent of the decay he had prior to his
5  incarceration and that the dentists tried to save his teeth even when the prognosis was poor
6  (Adu-Tutu Aff. ¶ 41, Ex. C, Doc. #37). Even if Plaintiff had evidence to show that proper
7  dental care meant that his teeth should have been filled during the first week of incarceration,
8  such evidence would only demonstrate a difference of opinion with the prison dentists, who
9  tried to save his teeth despite prior decay. A difference of opinion regarding the proper
10 course of treatment does not amount to deliberate indifference to Plaintiff's dental needs.
11 See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Consequently, there is no evidence
12 to show that proper dental care required all of Plaintiff's teeth be filled within his first week
13 of incarceration or to show that the failure to do so was deliberately indifferent on the part
14 of any of the Defendants.

15 **2. Policy of Filling One Tooth Per Visit**

16 Plaintiff admits that there is no written policy requiring the filling of only one tooth
17 per visit, but he claims that the dentists told him that there was such a policy, and he was
18 made to feel as if he had been done a special favor when on one occasion two teeth were
19 treated and on another, three teeth (Mot. at 2-3, Doc. #43). There is no evidence to support
20 this assertion, and Defendants submitted evidence that on three occasions (2/27/01, 4/25/02,
21 3/14/05), Plaintiff had three teeth filled and on one occasion (5/21/03), he had five teeth
22 filled (Adu-Tutu Aff. ¶¶ 8-37, Ex. C, Doc. #37). Also, Dr. Adu-Tutu asserts that half of
23 Plaintiff's thirty appointments involved the treatment of two or more teeth (Id. ¶ 38). Even
24 if there was sufficient evidence from which a jury could find that such a policy existed, the
25 evidence shows that Defendants violated it by frequently providing more care than the policy
26 would have allowed. This does not amount to deliberate indifference.

27
28

### 3. Delays in Receiving Dental Care

Plaintiff contends that the medical records show that he frequently waited four months and sometimes seven months between dental appointments, which contributed to the further decay of his teeth (Mot. at 3, Doc. #43). Other than his own supposition, Plaintiff has not submitted any evidence to show that the delays caused further decay. It is common knowledge that tooth decay is not a condition that necessarily calls for immediate care. Dr. Sears considered a filling to be routine care for which an inmate is placed on a routine care list (Health Needs Request, Ex. D, Doc. #37). Standing alone, a delay in treatment for a routine filling does not amount to an Eighth Amendment violation. See Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam). Further, there is no evidence that Plaintiff alerted any of the Defendants that he required care more quickly than he would have received on the routine care list. Compare Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (allegation that prison officials were aware that the loss of dentures caused severe pain, an inability to eat, and permanent teeth damage was sufficient to state a claim). Thus, there is no evidence to show that they knew that his teeth were decaying more rapidly than expected and that they were deliberately indifferent by disregarding his needs.

Plaintiff also contends that the delays in care were due in part to the lack of enough dentists on staff to render care. Prisoners must be provided with "a system of ready access to adequate dental care" so that prisoners are able to make their problems known to staff. Hunt, 865 F.2d at 200. Dr. Adu-Tutu attests that there were four dental positions but at the time of Plaintiff's action, one position was vacant, and he was aggressively trying to recruit for it (Adu-Tutu Aff. ¶ 40, Ex. C, Doc. #37). Despite the admitted open dental position, there is no evidence that Plaintiff was unable to make his needs known to dental staff. Notably, he asserted in his Complaint that Defendants were made aware of his needs by letters and grievances. But has not submitted copies of the letters or grievances; thus, there is no specific evidence to show that when he made his needs known to Defendants, he was not seen due to the lack of adequate staffing or due to their failure to heed his requests. Instead,

- 9 -

the record is replete with "substantial care," including 30 visits, 12 extractions and numerous fillings over a 4-year period. And, the evidence shows that when Plaintiff complained of pain and submitted emergency request, he was not ignored but was prescribed medication. Consequently, Plaintiff failed to submit evidence to rebut Defendants' evidence that he received access to adequate dental care.

### 4. Failure to Implement Policies

Plaintiff contends that the Defendants should have implemented policies and procedures to ensure that he would receive proper dental care (Mot. at 7, Doc. #43). He has not specifically described what policies should have been implemented, nor has he submitted evidence how the policies would have prevented any injury. His claim that Defendants "should have" created policies, even if true, sounds more in negligence, which is not actionable under the Eighth Amendment. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendations, cannot under our cases be condemned as the infliction of punishment." Farmer, 511 U.S. at 838. Plaintiff's vague claim that policies should have been implemented does not show that Defendants deliberately disregarded a risk to his health.

### 5. Conclusion

In sum, Plaintiff admitted that he had "substantial care" and the evidence in the record shows that he had 30 dental visits over 4 years, including 12 extractions and 24 fillings. The record also indicates that he was treated frequently for his complaints about tooth pain (1/22/01, 2/6/01, 4/25/01, 1/15/02, and 1/21/05). Plaintiff asserted that he "could go on repeating a story of pain, complaints and delays in treatment for 4½ years," and there are dental records and health needs requests that the Court and attorney general have in their possession (Mot. at 7). But it is not the obligation of the Court (and obviously not of the attorney general) to examine the evidence and to craft Plaintiff's case for him. It was Plaintiff's responsibility to submit the evidence and to point out what he believed it showed. Although the Court is sympathetic to the extensive amount of difficulties Plaintiff has had with his teeth, sympathy does not make a case of deliberate indifference. Because Plaintiff

has failed to submit any evidence to rebut Defendants' evidence that the record does not show deliberate indifference, the Court will grant Defendants' summary judgment motion.

**IT IS ORDERED:**

(1) The reference to the magistrate judge is withdrawn on Plaintiff's Motion for Jury Trial (Doc. #43).  The motion, which was also considered as a response, is **denied**.

(2) Defendants' Motion for Summary Judgment (Doc. #36) is **granted**.  The Clerk must enter judgment in favor of Defendants.

DATED this 13th day of December, 2006.

_____
Mary H. Murgula
United States District Judge